IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–00363–EWN–OES [*Consolidated with* 04–cv–00840–EWN–OES]


PAM FORAKER and
LARRY SCHMIDT,

      Plaintiffs,

v.

JAMES R. SCHAUER,
LARRY LASHA, and
KEITH L. McNEW, and
THE BOARD OF COUNTY COMMISSIONERS OF THE
  COUNTY OF FREMONT, STATE OF COLORADO, and
MELODY CLEMENTS,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

This is a section 1983 case.  Plaintiffs Pam Foraker and Larry Schmidt (collectively

"Plaintiffs") contend that Defendants James R. Schauer; Larry Lasha; Keith L. McNew; the

Board of County Commissioners of the County of Fremont, State of Colorado ("the Board");

and Melody Clements (collectively "Defendants")[1], *inter alia*, violated their constitutional rights,

breached their employment contracts, took actions that constituted outrageous conduct, and

violated the Colorado Open Meetings Law.  This matter is before the court on (1) "Motion for

---

[1]Throughout this Order and Memorandum of Decision, I refer to "Defendants" whether I
am discussing (1) all Defendants, or (2) the Defendants who are members of the Board.

-1-

Summary Judgment with Supporting Authority from Defendants Schauer, Lasha, McNew and

Board of County Commissioners, County of Fremont," filed November 15, 2004, (2) "Motion

for Summary Judgment with Supporting Authority from Defendant Melody Clements," filed

November 15, 2004, (3) "Motion to Stay Pending Determination of Entitlement to Immunity

from Defendants," filed November 15, 2004, and (4) Plaintiffs' "Motion to Supplement Brief,"

filed May 12, 2005.  Jurisdiction is premised upon 28 U.S.C. §§ 1331 and 1367 (2005).

## FACTS

*1.*      *Factual Background*

      *a.*      *Background and Pre-termination Events*

      Plaintiff Foraker worked for the County of Fremont ("County") as the office

administrator in the County's Buildings Department.  (Mot. for Summ. J. With Supporting

Authority from Defs. Schauer, Lasha, McNew and Board of County Commissioners, County of

Fremont at 1–2 [filed Nov. 15, 2004] [hereinafter "Defs.' Br."]; Am. Compl. ¶ 8 [filed Apr. 27,

2004] [hereinafter "Pl. Foraker's Am. Compl."].)[2]  Plaintiff Schmidt worked for the County as

---

[2]It is worth noting that the parties' factual briefing in this case is execrable.  Defendants,
in their statement of undisputed material facts, leave out numerous important facts that they
either address in other portions of their brief or completely omit.

      Plaintiffs' factual briefing is even worse.  Instead of responding to Defendants' factual
averments in accordance with my procedural rules and setting forth their own factual averments,
Plaintiffs state that "[t]he Plaintiffs do not agree with the facts as stated by the Defendants.  The
facts will be developed in this brief and Defendants' arguments will be addressed in the order
presented by the Defendants."  (Pls.' Resp. to Defs.' Mot. for Summ. J. with Supporting
Authority From Defs.' Schauer, Lasha, McNew and Board of County Commissioners, County
of Fremont at 1 [filed Jan. 24, 2005] [hereinafter "Pls.' Resp."].)  This sentence, as well as the
rest of Plaintiffs' response briefs, demonstrate Plaintiffs' flagrant disregard of my procedural
rules.  (*See* Practice Standards — Civil; Special Instructions Concerning Motions for Summary
Judgment ¶¶ 4–5.)  In spite of their flagrant and egregious violations of my procedural rules, I

the County's building official.  (Defs.' Br. at 1–2; Compl. ¶ 8 [filed Apr. 23, 2004] [hereinafter "Pl. Schmidt's Compl."].)  Defendant Clements began working as a receptionist for the County's Buildings Department in April 2002.  (Pl. Foraker's Am. Compl. ¶ 10.)  Plaintiffs supervised Defendant Clements.  (Mot. for Summ. J. with Supporting Authority from Def. Melody Clements, Statement of Undisputed Facts ¶ 4 [filed Nov. 15, 2004] [hereinafter "Def. Clements' Br.].)

After only a month or two on the job, Defendant Clements complained to the County's Human Resources Director about the allegedly hostile work environment created by Plaintiffs. (Def. Clements' Br., Statement of Undisputed Facts ¶ 4, Ex. A–5 at 19–20 [Clements Dep.].) Defendant Clements made these complaints during business hours.  (*Id.*)  The Human Resources Director asked Defendant Clements to discuss her situation with the Board.  (*Id.*, Statement of Undisputed Facts ¶ 7.)  The Board, at that time, consisted of Defendant Schauer, Defendant McNew, and Joseph F. Randall.  (*See, e.g.,* Defs.' Br., Ex. A–4 [Letter from County to Foraker on 7/31/02], Ex. A–5 [Letter from County to Schmidt on 7/31/02].)  Defendant Lasha did not take office as a County Commissioner until January 2003.  (*Id.*, Statement of Material Facts ¶ 9.) Although the deposition testimony cited by Plaintiffs is unclear, apparently, Defendant Clements complained in these meetings to the Human Resources Director and the Board that Plaintiffs treated her poorly, Plaintiff Foraker trained her poorly, and Plaintiff Foraker was generally hostile to her.  (Resp. to Mot. for Summ. J. with Supporting Authority From Def. Melody Clements, Ex. 1 at 18–19, 22–23, 30–31 [Clements Dep.] [filed Jan. 24, 2005]

---

reluctantly consider the facts set forth by Plaintiffs.

[hereinafter "Pls.' Clements Resp."].)[3]  Plaintiffs dispute the veracity of Defendant Clements'

statements.  (Pls.' Clements Resp., Ex. 4 at 65–67, 140–41 [Foraker Dep.], Ex. 5 at 190–91

[Schmidt Dep.].)  Defendant Clements' statements to the Board were a major reason why the

Board decided to terminate Plaintiffs' employment.  (*Id.*, Ex. 3 at 31 [Rall Dep.].)  This

termination is discussed in depth in the following section.

      The County's Personnel Policies and Procedures Manual (the "manual") contains

provisions dealing with disciplinary procedures — relevant to Plaintiffs' breach of employment

contract claims — and provisions dealing with internal complaints of a hostile work environment

— relevant to Plaintiffs' defamation claims.  Regarding disciplinary procedures, the manual states

that "[e]xcept in situations involving reductions in force, layoffs, or situations involving public or

employee safety, employees will be retained or separated on the basis of the adequacy of their

performance."  (Defs.' Br., Ex. A–17 at 3, 10 [Personnel Policies and Procedures Manual].)

While the manual also states that "the County and its management make no commitment for

employment of any specific duration," (*id.*, Ex. A–17 at 3 [Personnel Policies and Procedures

Manual]), the manual sets forth progressive disciplinary procedures.  According to the manual,

> [t]he procedures designated herein are to serve as the standard
> when disciplinary action is required.  They are to be followed in
> sequence unless adherence to this procedure presents an immediate
> and serious detrimental effect to the safety, moral or well-being of
> County employees, property, or the general public, or when the
> nature of the misconduct is so blatant so as to make corrective
> measures totally inadequate.  If so, the following may be

---

[3]Plaintiffs assert that Defendant Clements reported to the Human Resources Director/the
Board that a fellow employee told her that Plaintiff Foraker and Plaintiff Schmidt had a history
of abusing woman.  (Pls.' Clements Resp. at 2.)  Plaintiffs' citations to this assertion provide
absolutely no support for their assertion.

> implemented starting at any step of the procedure, up to and
> including termination at sole [sic] discretion of the Elected
> Official/Department Head of Fremont County.

(Pls.' Resp., Ex. 9 at 67 [Personnel Policies and Procedures Manual].)  Under the procedures, the

County first gives the employee a written warning.  (*Id.*, Ex. 9 at 68 [Personnel Policies and

Procedures Manual].)  Then, after the written warning, if the employee's performance has not

improved, the County follows a series of steps that may lead to suspending the employee

without pay.  (*Id.*)  The final step, enables the County to terminate an employee after the

written warning and the suspension without pay.  (*Id.*)  The policy explains that "[a]n employee

may be terminated without progression through the disciplinary process only if the conduct or

behavior presents immediate and serious consequences to the County, its employees or citizens

as specified at the beginning of this section."  (*Id.*)

Regarding harassment, the manual states that

> [i]f you feel you are the victim of discrimination or harassment,
> you should complain about any offending behavior or comments
> and you must bring your complaint to the attention of your
> supervisor or any other member of County Management or an
> Elected Official. . . . Any complaint you may have regarding
> harassment should be brought to the attention of Fremont County,
> which will investigate your complaint promptly, fully and
> objectively.

(Def. Clements' Br., Ex. A–7 at 38 [Personnel Policies and Procedures Manual].)

### *b.*   *Plaintiffs' Termination and Subsequent Proceedings*

On July 31, 2002, the Board provided Plaintiffs and Michael Cox, another County

employee, with written notice of their termination.  (Defs.' Br., Statement of Material Facts ¶ 1.)

These written notices began by stating "[t]he purpose of this letter is to inform you that your

employment with Fremont County is immediately terminated." (*Id.*, Ex. A–4 [Letter from County to Foraker on 7/31/02], Ex. A–5 [Letter from County to Schmidt on 7/31/02].)  These notices further provided that "Fremont County is also compensating you in an amount equivalent to one month's regular pay as severance . . ." (*Id.*)  These notices listed general reasons for the Board's decision to terminate Foraker and Schmidt, such as the Board's statement that Plaintiffs' "[b]ehavior that has been displayed in the building department is inconsistent with expectations and standards established by the county." (*Id.*)  These letters, however, did not discuss specific incidents or allegations.

Plaintiffs, as well as Cox, each requested an appeal of the Board's decision to terminate their employment.  (*Id.*, Statement of Material Facts ¶ 6, Ex. A–6 [Letter from Board to Foraker on 8/15/02], Ex. A–7 [Letter from Board to Schmidt on 8/15/02].)  The Board scheduled an open hearing on this appeal and set forth a long list of specific problems it had with the job performance of each Plaintiff.  (*Id.*, Ex. A–6 [Letter from Board to Foraker on 8/15/02], Ex. A–7 [Letter from Board to Schmidt on 8/15/02].)  The Board invited Plaintiffs to respond to these allegations, which Plaintiffs chose not to do.  (*Id.*, Statement of Material Facts ¶ 5.)

On August 29, 2002, the Board reaffirmed its decision to terminate Plaintiffs and reversed its decision to terminate Cox, reinstating him in his previous job.  (*Id.*, Statement of Material Facts ¶¶ 10–11.)  The Board set forth its reasoning in letters to Plaintiffs.  (*Id.*, Ex. A–12 [Letter from Board to Foraker on 8/29/02], Ex. A–11 [Letter from Board to Schmidt on 8/29/02].)  Of particular importance to the present motions is one of the seven reasons set forth by the Board in the Board's letter to Plaintiff Foraker.  This reason stated, *in toto*,

> The Board made it clear at the time of the meeting where the
> termination was announced that you were to leave the building and
> collect personal effects at a later date.  You immediately went to
> the county computer at your work station and began deleting
> information from the computer, using profanity throughout the
> entire process.  Although the Board understands that you were
> upset and quite surprised by the termination, your immediate
> reaction was to delete information from the county computer.  This
> conduct is inconsistent with the expectations and standards
> established by the county and demonstrates a general attitude
> problem.

(*Id.*, Ex. A–12 [Letter from Board to Foraker on 8/29/02].)

These proceedings generated significant coverage in local newspapers.  On August 30,

2002, the newspaper the Daily Record reported that

> [t]he [County] Commissioners gave several reasons not to reinstate
> [Plaintiffs] including their behavior and attitude to[wards] others in
> the public and with other employees in the building, a lack of [an]
> organization system and the delay of issuing building permits. . . .
> [Defendant] Schauer also expressed dismay at [Plaintiffs']
> treatment of the other employees in the building . . . What did
> bother the Commissioners, . . . [according to Defendant Schauer], is
> [that] many members of the public have not been treated
> courteously and respectfully by building department staff.

(Pls.' Resp., Ex. 11 at 1 [newspaper articles].)  On the same day, the newspaper Canyon Current

reported that "[t]he [County] Commissioners said they terminated [Plaintiffs] mainly because of

their negative attitude toward[s] the public and the office's timeliness."  (*Id.*, Ex. 11 at 7

[newspaper articles].)  The same article quoted Schauer stating that he "made a written comment

that there were a lot of complaints from the community on delay (for permits)."  (*Id.*)  Then on

September 6, 2002, the Canyon Current reported that, according to Defendant Schauer,

Plaintiffs' "'behavior and attitudes are serious enough to warrant termination of employment,'"

and that "'[t]he problem, in the Board's view, is that all members of the public have not received the same treatment by the building department staff." (*Id.*, Ex. 11 at 5 [newspaper articles].)

According to Plaintiffs, the allegations contained in these articles with regards to their job performances were false. (*Id.*, Ex. 2 at 128 [Foraker Dep.], Ex. 12 at 183–85 [Schmidt Dep.].) Plaintiff Foraker testified that the newspaper articles had a negative affect on her ability to procure new employment. (*Id.*, Ex. 2 at 158–61 [Foraker Dep.].)

### c. *Plaintiff Schmidt's Filing of a Charge of Discrimination*

On May 13, 2003, Plaintiff Schmidt filed an intake form with the Colorado Civil Rights Division ("CCRD") with regards to his complaint of age discrimination against the Board. (*Id.*, Ex. 15 at 1–4 [CCRD Intake Form].) This intake form states that "[c]ompleting this intake questionnaire does not constitute the filing of a charge." (*Id.*, Ex. 15 at 4 [CCRD Intake Form].) The intake form, in unidentified handwriting, contains the following statement: "2 Charges[;] RH[;] 30 days left to 300 days for EEOC [j]urisdiction." (*Id.*, Ex. 15 at 1 [CCRD Intake Form].) In this same exhibit in Plaintiffs' response brief, Plaintiffs attach a sheet without a letterhead or identifiable signature which contains handwriting that states, *in toto*: "Charge is timely filed, i.e. date stamped letter from CCRD (5/13/03) within 300 days[.] Left V.M. w/ Brenda Jackson to c/b[.] 8/13/03." (*Id.*, Ex. 15 at 135 [handwritten notes] [emphasis in original].)

On June 26, 2003, the EEOC sent a notice of a charge of discrimination to the County, which stated that "a charge of employment discrimination under . . . The Age Discrimination in Employment Act of 1967 ["ADEA"]. . . has been received by . . . The Colorado Civil Rights Division and sent to the EEOC for dual filing purposes." (*Id.*, Ex. 16 [EEOC Notice of Charge].) On June 27, 2003, CCRD wrote to Plaintiff Schmidt and explained, in pertinent part, that

-8-

> I have to refer your charge to the EEOC. . . . The reason for the referral is because the date provided is over the six (6) month[] jurisdictional timeframe required by the CCRD to accept a Charge of Discrimination from you. . . . The charge will be dually filed with our office, but the investigation will take place at the EEOC. . . .
>
> In order to **formally** file your Charge of Discrimination, **please sign and date all copies at the marked spaces** and immediately return **three (3)** copies to my attention, at this office, keeping a copy for your records.

(Defs.' Br., Ex. A–14 [Letter from Lewis to Schmidt on 6/27/03] [emphasis in original].)

On July 2, 2003, Plaintiff Schmidt filed a charge of discrimination with the EEOC. (*Id.*, Ex. A–13 [EEOC Charge].) On July 23, 2003, the CCRD once again wrote to Plaintiff Schmidt, explaining that Plaintiff Schmidt's "charge of discrimination . . . has been terminated by this office and forwarded to the . . . [EEOC]. By this action, under the law, the . . . [EEOC] will process your charge." (*Id.*, Ex. A–15 [Letter from Pryor to Schmidt on 7/23/03].)

On March 19, 2004, the EEOC wrote to the County and stated that the EEOC "has terminated its investigation of your organization under the . . . [ADEA]. The fact that the [EEOC] has terminated its investigation does not certify that your organization is in compliance nor does it affect the rights of any affected parties to file suit against you under the statute." (*Id.*, Ex. A–16 [Letter from Leino to Jackson on 3/19/04].)

## 2.    *Procedural History*

Plaintiff Foraker filed her complaint in this court on March 1, 2004 in civil action number 04–cv–00363–EWN–OES. (Compl. [filed Mar. 1, 2004].) Plaintiff Schmidt filed his complaint in this court on April 23, 2004 in civil action number 04–cv–00840–EWN–OES. (Pl. Schmidt's Compl.) In this complaint, Plaintiff Schmidt set forth nine claims for relief: (1) section 1983

violation of his due process rights, (2) state law discrimination and ADEA discrimination, (3)

breach of employment contract, (4) outrageous conduct, (5) defamation, (6) violation of the

Government Employee Rights Act, (7) section 1983 violation of his liberty interest rights, (8)

attorneys' fees, and (9) violation of the Colorado Open Meetings Law.  (Pl. Schmidt's Compl.)

Plaintiff Schmidt's fourth claim for relief is directed against all Defendants, Plaintiff Schmidt's

fifth claim for relief is directed against Defendant Clements, and all of the remaining claims for

relief are directed against the Board and Defendants Schauer, Lasha, and McNew.  (*Id.*)

On April 27, 2004, Plaintiff Foraker filed an amended complaint.  (Pl. Foraker's Am.

Compl.)  In this amended complaint, Plaintiff Foraker set forth eight claims for relief: (1) section

1983 violation of her due process rights, (2) section 1983 violation of her right to privacy, (3)

breach of employment contract, (4) outrageous conduct, (5) defamation, (6) section 1983

violation of his liberty interest rights, (7) attorneys' fees, and (8) violation of the Colorado Open

Meetings Law.  (Pl. Foraker's Am. Compl.)  Plaintiff Foraker's fourth claim for relief is directed

against all Defendants, Plaintiff Foraker's fifth claim for relief is directed against Defendant

Clements, and apparently, all of the remaining claims for relief are directed against the Board and

Defendants Schauer, Lasha, and McNew.  (*Id.*)

The two actions were consolidated on June 15, 2004.  (Order Granting Defs.' Mot. to

Consolidate [filed June 15, 2004].)  On November 15, 2004, Defendants Schauer, Lasha,

McNew, and the Board filed a motion for summary judgment.  (Defs.' Br.)  On the same day,

Defendant Clements filed a motion for summary judgment and incorporated all of the arguments

in the other Defendants' motion for summary judgment.  (Def. Clements' Br.)  Defendants also

filed a motion to stay pending the determination of their qualified immunity claims on November

15, 2004. (Mot. to Stay Pending Determination of Entitlement to Immunity From Defs. [filed

Nov. 15, 2004].)  Plaintiffs, after filing their response briefs, filed a motion to supplement their

response brief to Defendant Clements' motion for summary judgment, and attached their

supplement.  (Mot. to Supplement Br. [filed May 12, 2005].)  All motions are now fully briefed.

## ANALYSIS

### 1.   *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)

(2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v.

City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex

Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter."  *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325).  The

nonmoving party may not rest solely on the allegations in the pleadings, but must instead

designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S.

at 324; *see* Fed. R. Civ. P. 56(e).  "'Only disputes over facts that might affect the outcome of the

suit under governing law will preclude the entry of summary judgment.'"  *Sanchez v. Denver

Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248).  The court

may consider only admissible evidence when ruling on a summary judgment motion.  *See World

*of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).  The factual record

must be viewed in the light most favorable to the nonmoving party.  *Concrete Works, Inc.*, 36

F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241

[10th Cir. 1990]).  I address each issue in the order it was raised by Defendants in their summary

judgment briefs.

**2.**     ***Section 1983 Procedural Due Process***

Defendants move for summary judgment on both Plaintiff Foraker's and Plaintiff

Schmidt's first claims for relief, section 1983 violation of procedural due process.  (Defs.' Br. at

11–20.)  Although Defendants do not dispute that they acted under the color of state law,

Defendants contend that (1) Plaintiffs did not have protected property interests in their jobs, (2)

Defendants gave Plaintiffs proper due process protections, and (3) Defendants are protected by

qualified immunity.  (*Id.*)  I address the qualified immunity argument after jointly addressing the

first two issues.

**a.**     ***Merits of Section 1983 Procedural Due Process***

In order to "assess whether an individual was denied procedural due process, courts must

engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due

process protections were applicable; and, if so, then (2) was the individual afforded an

appropriate level of process."  *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir.

2004) (quoting *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 [10th Cir. 1996]).

Regarding the first step, Defendants briefly argue (in one sentence) that Plaintiffs did not

have protected property interests in their jobs.  (Defs.' Br. at 12.)  Plaintiffs do not address this

argument.  (Pls.' Resp.)  Despite Plaintiffs' failure to address this argument and Defendants'

inadequate briefing, there is sufficient evidence in the record for me to conclude that summary judgment is not appropriate on this basis.

"[W]hen a person's employment can be terminated only for specified reasons, his or her expectation of continued employment is sufficient to invoke the protections of the Fourteenth Amendment." *West v. Grand County*, 967 F.2d 362, 366 (10th Cir. 1992).  The County's Personnel Policies and Procedures Manual states that "[e]xcept in situations involving reductions in force, layoffs, or situations involving public or employee safety, employees will be retained or separated on the basis of the adequacy of their performance." (Defs.' Br., Ex. A–17 at 3, 10 [Personnel Policies and Procedures Manual].)  While the manual also states that "the County and its management make no commitment for employment of any specific duration," (*id.*, Ex. A–17 at 3 [Personnel Policies and Procedures Manual]), this language is contradicted by the previously quoted language.  Based upon the foregoing, the evidence taken in a light most favorable to Plaintiffs demonstrates that Plaintiffs' employment can only be terminated for a specified reason — adequacy of performance.  Thus, Plaintiffs have a protected property interest in their jobs.

Next, I address the second step, whether the employer afforded the employees an appropriate level of process.  Due Process requires that a government employee receive a pre-termination hearing.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985); *Montgomery*, 365 F.3d at 935–36; *West*, 967 F.2d at 367.  This pre-termination hearing, "though necessary, need not be elaborate." *Loudermill*, 470 U.S. at 545.  The "pre-termination hearing requires: (1) oral or written notice [to the employee] of the charges against him; (2) an explanation of the employer's evidence and [3] an opportunity [for the employee] to present his

side of the story." *Montgomery*, 365 F.3d at 936 (internal quotation marks omitted) (alterations in original).

Here, Defendants have set forth no evidence that Plaintiffs received a pre-termination hearing. The July 31, 2002 letters are clear that the Board terminated Plaintiffs Schmidt and Foraker as of that date. (Defs.' Br., Statement of Material Facts ¶ 1, Ex. A–4 [Letter from Board to Foraker on 7/31/02], Ex. A–5 [Letter from Board to Schmidt on 7/31/02].) Thus, the August 2002 hearing cannot constitute a pre-termination hearing, despite Defendants' argument to the contrary. Accordingly, by failing to have a pre-termination hearing, Defendants did not provide Plaintiffs with adequate procedural due process protections.

### b.   *Qualified Immunity Regarding Section 1983 Procedural Due Process*

Defendants argue that even if they violated Plaintiffs' procedural due process rights, the individual Defendants are entitled to qualified immunity. (*Id.* at 15–20.) Qualified immunity protects public officials from individual liability in a section 1983 action unless the officials violated "clearly established . . . constitutional rights of which a reasonable person would have known." *Workman v. Jordan*, 32 F.3d 475, 478 (10th Cir. 1994). Once a defendant government official raises the defense of qualified immunity, the plaintiff must demonstrate that: (1) the defendant's conduct violated the law, and (2) the law was clearly established when the alleged violation occurred. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996). The plaintiff must articulate the clearly established constitutional right and the defendants' conduct which violated the right. *Id.* To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635,

640 [1987]).  Although the very action in question does not have to have previously been held

unlawful, the unlawfulness must be apparent in light of pre-existing law.  *Id.*  In determining

whether a law was clearly established, a court must rely on the objective reasonableness of an

official's conduct as measured by reference to the currently applicable law.  *Harlow v.

Fitzgerald*, 457 U.S. 800, 817 (1982).  If the law at that time was clearly established, "the

immunity defense ordinarily should fail, since a reasonably competent public official should

know the law governing his conduct."  *Id.*

      Here, for the reasons set forth in the previous subsection, the facts taken in a light most

favorable to Plaintiffs show that Defendants' conduct violated the law.  The legal requirement of

a pre-termination hearing has been clearly established for years.  *E.g., Loudermill*, 470 U.S. at

545; *Montgomery*, 365 F.3d at 935–36; *West*, 967 F.2d at 367.  Thus, the individual Defendants

cannot prevail on their qualified immunity defense.  Plaintiffs' section 1983 claims therefore

survive Defendants' motion for summary judgment.

**3.**      **Breach of Contract**

      Defendants move for summary judgment on both Plaintiff Foraker's and Plaintiff

Schmidt's third claims for relief, breach of contract.  (Defs.' Br. at 21–22.)  As a general matter,

in some circumstances, an employee may state a claim for relief against an employer for breach of

contract based upon the employer's employee manual.  *Continental Air Lines, Inc. v. Keenan*,

731 P.2d 708, 711 (Colo. 1987); *Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619,

622–23 (Colo. App. 1988).[4]  Defendants argue that (1) the policy manual's pre-termination

_____

    [4]The parties do not address many of the typical issues that arise in such claims, such as
consideration and reliance.  Accordingly, I only address the issues raised by the parties and

procedures were not mandatory, and, in any event, (2) they followed these procedures. (*Id.*) I address the latter argument first.

The manual sets forth a specific procedural framework for employee discipline. (Pls.' Resp., Ex. 9 at 67–68 [Personnel Policies and Procedures Manual].) Defendants fired Plaintiffs without taking any of these progressive disciplinary measures. (Defs.' Br., Ex. A–4 [Letter from Board to Foraker on 7/31/02], Ex. A–5 [Letter from Board to Schmidt on 7/31/02]; Pls.' Resp., Ex. 2 at 167–68 [Foraker Dep.], Ex. 12 at 161 [Schmidt Dep.].) There is an exception to these procedures wherein the Board can terminate an employee without following the procedures in cases of an "immediate and serious detrimental effect to the safety, moral or well-being of County employees, property, or the general public, or when the nature of the misconduct is so blatant so as to make corrective measures totally inadequate." (Pls.' Resp., Ex. 9 at 67 [Personnel Policies and Procedures Manual].) The facts taken in a light most favorable to Plaintiffs do not show that this case fits into this exception to the manual's procedural requirements. Defendants' have not set forth any evidence of Plaintiffs' actions which fall within the exception. Thus, Defendants' arguments that they complied with the manual's procedures is without merit.

Defendants' former argument — that the policy manual's pre-termination procedures were not mandatory — likewise fails. As discussed above, the manual's pre-termination procedure, by its own language, is only discretionary if "adherence to this procedure presents an immediate and serious detrimental effect to the safety, moral or well-being of County employees,

---

express no opinion regarding the standard issues that the parties fail to raise.

-16-

property, or the general public, or when the nature of the misconduct is so blatant so as to make corrective measures totally inadequate." (*Id.*)  As set forth above, the facts taken in a light most favorable to Plaintiffs show that this case does not fit into this exception.  Moreover, the Board never stated that Plaintiffs' actions fall into this exception.  Courts have concluded that employment policies are binding even when the policies use discretionary language such as "the steps for disciplinary action *may* be . . ." *Evenson v. Colorado Farm Bureau Mut. Ins. Co.*, 879 P.2d 402, 409 (Colo. App. 1993) (emphasis in original).  Here, the language of the manual is far less equivocal.  Accordingly, I deny Defendants' motion for summary judgment on Plaintiffs' breach of contract claims.

**4.**     ***Outrageous Conduct***

Defendants move for summary judgment on both Plaintiff Foraker's and Plaintiff Schmidt's fourth claims for relief, outrageous conduct.  (Defs.' Br. at 22–25; Def. Clements' Br. at 6–7.)  The tort of outrageous conduct has three elements, that the defendant "(1) . . . engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003); *see also Bohrer v. DeHart*, 943 P.2d 1220, 1224 (Colo. App. 1996).

> Before permitting a plaintiff to present a claim for outrageous conduct to the jury, the trial court must initially rule on the threshold issue of whether the plaintiff's allegations of outrageous conduct are sufficiently outrageous as a matter of law: "Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question."

-17-

*Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665–66 (Colo. 1999) (quoting *Culpepper v. Pearl St.*

*Bldg., Inc.*, 877 P.2d 877, 883 [Colo. 1994]).

> the level of outrageousness required for conduct to create liability
> for intentional infliction of emotional distress is extremely high:
> "Liability has been found only where the conduct has been so
> outrageous in character, and so extreme in degree, as to go beyond
> all possible bounds of decency, and to be regarded as atrocious, and
> utterly intolerable in a civilized community."

*Id.* at 666 (quoting *Rugg v. McCarty*, 476 P.2d 753, 756 [Colo. 1970]).  Moreover, "[a]n actor's

knowledge that another person is peculiarly susceptible to emotional distress, by reason of some

physical or mental condition or peculiarity, may render the conduct extreme and outrageous."

*Cassidy v. Millers Cas. Ins. Co. of Texas*, 1 F. Supp. 2d 1200, 1213 (D. Colo. 1998); *see also*

*Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292, 294 (Colo. App. 1982).

     According to Plaintiffs' response brief, the outrageous conduct claims against the Board

and Defendants Schauer, Lasha, and McNew are based upon the facts that (1) Defendants

terminated their employment without any valid basis, and (2) Defendants had them removed

from their offices by plain-clothed law enforcement officers.  (Pls.' Resp. at 13–14.)  Assuming

the truth of these allegations, such conduct does not even begin to meet the demanding standard

of an outrageous conduct claim.  This is not conduct that is "so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized community."  *Coors*, 978 P.2d at 666 (quoting *Rugg*, 476 P.2d at 756).  Plaintiffs'

outrageous conduct claims therefore fail.

     With respect to Plaintiffs' outrageous conduct claims against Defendant Clements,

Plaintiffs have not responded to Defendants' arguments that summary judgment is appropriate

on these claims with regards to Defendant Clements.  (*See* Pls.' Clements Resp.)  I therefore

determine that Plaintiffs have waived their outrageous conduct claims against Defendant

Clements.  *See Celotex Corp.*, 477 U.S. at 324 (the nonmoving party may not rest solely on the

allegations in the pleadings, but must instead designate "specific facts showing that there is a

genuine issue for trial.").  Plaintiffs have provided no evidence, moreover, that Defendant

Clements actions would meet the demanding standard of an outrageous conduct claim.

Furthermore, Defendant Clements argues that this claim is barred by the Colorado Workers'

Compensation Act, and for the reasons set forth in *Analysis* § 9, *infra*, this argument is

meritorious.  Accordingly, Plaintiffs' outrageous conduct claims against Defendant Clements fail.

**5.**     ***Section 1983 Liberty Interest***

Defendants move for summary judgment on Foraker's sixth claim for relief and Schmidt's

seventh claim for relief, deprivation of a section 1983 liberty interest.  (Defs.' Br. at 25–27.)  A

public employee may state a claim for 1983 relief where the public employer makes a public

statement "of unfounded charges of dishonesty or immorality that might seriously damage the

employee's standing or associations in the community and foreclose the employee's freedom to

take advantage of future employment opportunities."  *Melton v. City of Oklahoma City*, 928 F.2d

920, 927 (10th Cir. 1991) (en banc); *see also Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228,

1235 (10th Cir. 1998).  In order for a public employee to set forth a claim under section 1983 for

a deprivation of a liberty interest, the public employee must show: (1) the employer's

statements "impugn[ed] the good name, reputation, honor, or integrity of the employee," (2) the

statements were false, (3) the statements "foreclose[d] other employment opportunities," and (4)

the statements were published.  *Watson*, 75 F.3d at 579.  I address each factor in turn.

First, the employer's statements must "impugn the good name, reputation, honor, or integrity of the employee." *Id.* The issue of whether Defendants' statements — regarding Plaintiffs' alleged bad behavior, bad attitudes, lack of respect, and inability to timely perform their job functions — impugn Plaintiffs' good names and reputation is best left for the jury. Second, the statements must be false. *Id.* The facts taken in a light most favorable to Plaintiffs demonstrate that the statements in the newspapers were false. (Pls.' Resp., Ex. 2 at 128 [Foraker Dep.], Ex. 12 at 183–85 [Schmidt Dep.].) Third, the statements must "foreclose other employment opportunities." *Watson*, 75 F.3d at 579. The facts taken in a light most favorable to Plaintiffs demonstrate that this is true with regards to Plaintiff Foraker. (Pls.' Resp., Ex. 2 at 158–61 [Foraker Dep.].) Plaintiffs have not produced any evidence that Plaintiff Schmidt's employment opportunities were foreclosed by these newspaper reports. Accordingly, Plaintiff Schmidt's claim fails. Fourth, the statements must be published. *Watson*, 75 F.3d at 579. There is no dispute that the statements were published. (Pls.' Resp., Ex. 11 at 1, 7 [newspaper articles].) Based on the foregoing, Plaintiff Foraker's deprivation of a section 1983 liberty interest claim survives summary judgment, but Plaintiff Schmidt's deprivation of a section 1983 liberty interest claim fails.

**6.    *Open Meetings Act***

Defendants move for summary judgment on Plaintiff Foraker's eighth claim for relief and Plaintiff Schmidt's ninth claim for relief — violation of the Colorado Open Meetings Law. (Defs.' Br. at 27–28.) The Colorado Open Meetings Law "is intended to 'afford the public access to a broad range of meetings at which public business is considered.'" *Bd. of County*

*Comm'rs, Costilla County v. Costilla County Conservancy Dist.*, 88 P.3d 1188, 1193 (Colo.

2004) (quoting *Benson v. McCormick*, 578 P.2d 651, 652 [1978]).

When the Colorado Open Meetings Law is violated, the act grants relief for aggrieved

citizens as set forth in Colorado Revised Statutes section 24–6–402(9).  This section provides

that "[t]he courts of record of this state shall have jurisdiction to issue injunctions to enforce the

purposes of this section upon application by any citizen of this state."  Colo. Rev. Stat. §

24–6–402(9).  There is no language in the Colorado Open Meetings Law that suggests that an

aggrieved citizen is entitled to monetary damages.  Colo. Rev. Stat. §§ 24–6–401, 24–6–402.

Likewise, I have located no cases that suggest that an aggrieved citizen is entitled to any relief

under the Colorado Open Meetings Law other than injunctive relief.

Plaintiff Foraker alleges in her amended complaint that "[t]he decision to terminate the

employment of the Plaintiff is void for failing to comply with the Colorado Open Meeting's

Law." (Foraker Am. Compl. ¶ 56.)  However, in her prayer for relief, Plaintiff Foraker only

requests monetary damages and does not request any form of injunctive relief.  (Foraker Am.

Compl. at 13.)  Plaintiff Schmidt's complaint is the same as Plaintiff Foraker's amended

complaint.  (Schmidt Compl. at 13.)  In the preliminary pretrial order, Plaintiffs do not request

injunctive relief.  (Prelim. Pre-trial Order at 3 [filed Oct. 1, 2004].)  Rather, Plaintiffs only

request monetary damages. (*Id.*)

Since Plaintiffs only request damages and do not request injunctive relief in the pretrial

order, Plaintiffs are not entitled to any relief under the Colorado Open Meetings Law.  The

pretrial order is binding on the parties.  Federal Rule of Civil Procedure 16(e) provides that

"[a]fter any conference held pursuant to this rule, an order shall be entered reciting the action

taken. This order shall control the subsequent course of the action unless modified by a

subsequent order." Fed. R. Civ. Proc. 16(e). An order entered pursuant to Rule 16(e) supersedes

the pleadings and controls the subsequent course of litigation. *Hullman v. Bd of Trs. of Pratt*

*Cmty. Coll.*, 950 F.2d 665, 668 (10th Cir. 1991). The resulting pretrial order "measures the

dimensions of the lawsuit, both in the trial court and on appeal." *Tyler v. City of Manhattan*, 118

F.3d 1400, 1403 (10th Cir. 1997). "Since the whole purpose of Rule 16 is to clarify the real

nature of the dispute at issue, attorneys at a pre-trial conference must make a full and fair

disclosure of their views as to what the real issue of the trial will be." *Rios v. Bigler*, 67 F.3d

1543, 1549 (10th Cir. 1995). An issue that is not included in the pre-trial order is "not part of

the case before the district court." *Gowan v. United States Dep't of Air Force*, 148 F.3d 1182,

1192 (10th Cir. 1998). Since Plaintiffs have not requested any relief that they might be entitled

to under the Colorado Open Meetings Law, I grant Defendants' motion for summary judgement

as to this issue.

**7.      *Section 1983 Invasion of Privacy***

Defendants move for summary judgment on Plaintiff Foraker's second claim for relief,

section 1983 invasion of privacy. (Defs.' Br. at 29–30.) "Searches and seizures by government

employers or supervisors of the private property of their employees . . . are subject to the

restraints of the Fourth Amendment." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) (plurality

decision). Thus, a public employee may state a claim against a public employer when the

employer engages in an unreasonable search and seizure of the employee's property where the

employee has a reasonable expectation of privacy. *Id.* at 715–26. A public employee, moreover,

can state a proper section 1983 cause of action against the public employer when the employer

discloses personal confidential information about the employee.  *Doe v. Southeastern Pennsylvania Transp. Auth.*, 72 F.3d 1133, 1137 (3d Cir. 1995) ("the right to privacy encompasses . . . an interest in avoiding disclosure of personal information.").

Plaintiff Foraker's claim is based upon Defendants' citation of her deletion of electronic mail messages after they terminated her as a reason for upholding their decision to terminate her. (Pls.' Resp. at 18–21; Foraker Am. Compl. ¶¶ 30–36.)  Plaintiffs' premise this argument upon the Board's August 29, 2002 letter that reaffirmed the Board's decision to terminate Plaintiff Foraker.  (*Id.*)  In this letter, one of the seven reasons for the Board's decision to uphold their prior decision to terminate Plaintiff Foraker, stated, *in toto*,

> [t]he Board made it clear at the time of the meeting where the termination was announced that you were to leave the building and collect personal effects at a later date.  You immediately went to the county computer at your work station and began deleting information from the computer, using profanity throughout the entire process.  Although the Board understands that you were upset and quite surprised by the termination, your immediate reaction was to delete information from the county computer.  This conduct is inconsistent with the expectations and standards established by the county and demonstrates a general attitude problem.

(Defs.' Br., Ex. A–12 [Letter from Board to Foraker on 8/29/02].)

Plaintiff Foraker does not allege that Defendants disclosed any information from her electronic mail messages.  (Pls.' Resp. at 18–21.)  Rather, her argument is more convoluted — that she had a constitutional right to privacy in her personal electronic mail messages on her work computer, and that Defendants cannot use her deletion of such electronic mail messages as a basis

for terminating her employment.  (*Id.*)  Plaintiff Foraker has provided no case law or other legal authority to support her proposition that this is a recognized claim for relief.  (*Id.*)[5]

Even if this court were to assume *arguendo* that (1) Plaintiff Foraker has a privacy right in her personal electronic mail messages on her work computer, and (2) a cause of action exists when a public employer discharges an employee for taking an action in an effort to possibly prevent a violation of her right to privacy, Plaintiff Foraker's argument would still fail.  Here, one of the seven reasons why the Defendants upheld their previous determination to discharge Plaintiff Foraker was based, in part, upon Plaintiff Foraker "deleting information from the computer."  (Defs.' Br., Ex. A–12 [Letter from Board to Foraker on 8/29/02].)  Plaintiff Foraker has not provided evidence that Defendants had any knowledge regarding the fact that she was deleting personal electronic mail messages.  Moreover, the Board was at least as concerned about the unprofessional actions by Plaintiff Foraker of using profanity and taking the *immediate* action of deleting information.  (*Id.*)  The Board's statement on this issue, furthermore, was only one of seven reasons provided for the Board's decision.  (*Id.*)  Even with the facts taken in a light most favorable to Plaintiff Foraker, there is insufficient evidence to demonstrate that Defendants

---

[5]The only case that Plaintiffs cite with regards to this claim is *In re Bd. of County Comm'rs of County of Arapahoe*, 95 P.3d 593 (Colo. App. 2003), *cert. granted in part sub nom. Denver Publ'g Co., d/b/a Rocky Mountain News v. Bd. of County Comm'rs of County of Arapahoe*, No. 03SC783, 2004 WL 1658308 (Colo. July 26, 2004), to which, as a side note, Plaintiffs do not even provide a proper reporter citation.  (Pls.' Resp. at 19.)  This case deals specifically with a public employer's disclosure of personal confidential information about a public employee.  *In re Bd. of County Comm'rs*, 95 P.3d at 599–602.  Thus, this case does not support Plaintiffs argument.  Ironically, this case stands for the proposition that public employees may "not have a reasonable expectation that their e-mails would not be disclosed at all," which contradicts Plaintiffs' argument.  *Id.* at 602.

discharged Plaintiff Foraker for taking an action in an effort to possibly prevent a violation of her

right to privacy.  For the foregoing reasons, Plaintiff Foraker's section 1983 liberty interest claim

fails as a matter of law.

**8.**     ***Age Discrimination Claims***

Defendants move for summary judgment on Plaintiff Schmidt's second claim for relief,

age discrimination in violation of the ADEA and Colorado state law, and Plaintiff Schmidt's sixth

claims for relief, age discrimination in violation of the Government Employee Rights Act of 1991.

(Defs.' Br. at 30–32.)[6]  Defendants argue that Plaintiff Schmidt's claims are time barred for

failure to timely file a claim of age discrimination with the EEOC.  (*Id.*)

I address Plaintiff Schmidt's state discrimination law and Government Employee Rights

Act of 1991 claims first.  Under Colorado state discrimination law, a plaintiff shall file a charge of

discrimination with the CCRD "within six months after the alleged discriminatory or unfair

employment practice occurred," or the plaintiff's claim "shall be barred."  Colo. Rev. Stat. §

24–34–403 (2005).  Under the Government Employee Rights Act of 1991, a plaintiff must file

---

[6]In Plaintiff Schmidt's complaint, Plaintiff Schmidt incorrectly cites to a non-existent
statute, "42 U.S.C. § 2000(e)," when citing to the ADEA, and cites to another non-existent
statute, "C.R.S. 4–34–401 et. seq.," when citing to Colorado state discrimination laws.  (Pl.
Schmidt's Compl. ¶ 34.)  Also, as noted below, Plaintiff Schmidt cites to statutory provisions
that have long since been repealed and transferred with regards to his Government Employee
Rights Act of 1991.  (*Id.* ¶ 49.)  In other words, Plaintiff Schmidt has set forth, in reality, three
discrimination claims, and has only cited to non-existent or repealed statutes with regards to all
three discrimination claims.

These are but three examples of numerous and unacceptable mistakes by Plaintiffs'
counsel.  Plaintiffs' counsel's countless mistakes, poor legal drafting, and persistent failures to
follow proper procedural rules have resulted in a significant waste of judicial resources.

his complaint of discrimination with the EEOC within 180 days after the date of the unlawful employment practice. 42 U.S.C. § 2000e–16c(b)(1).[7]

Plaintiff Schmidt's first filing with any agency occurred, at the earliest, on May 13, 2003. (Pls.' Resp., Ex. 15 at 1–4 [CCRD Intake Form].) Since the Board fired Plaintiff Schmidt on July 31, 2002, (Defs.' Br., Statement of Material Facts ¶ 1), both Plaintiff Schmidt's state discrimination law and Government Employee Rights Act of 1991 claims are untimely. Accordingly, I grant Defendants summary judgment on Plaintiff Schmidt's state discrimination law and Government Employee Rights Act of 1991 claims.

The issue with regard to Plaintiff Schmidt's ADEA claim is more difficult. A plaintiff must file a complaint with the EEOC within 300 days from the date of the unlawful employment practice in order to avoid summary judgment on an ADEA. *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1234 (10th Cir. 1999). As set forth below, Defendants' motion for summary judgment as to this issue fails because of (1) the presence of disputed questions of fact and (2) insufficient briefing by the parties.[8]

---

[7]Both parties incorrectly cite to the Government Employee Rights Act of 1991, (Defs.' Br. at 31, Schmidt's Compl. ¶ 49), by referring to sections of the United States Code that were either repealed or transferred in 1995. *See* 2 U.S.C. §§ 1201 to 1224 (repealed 1995). The portions of the Government Employee Rights Act of 1991 that are still in force are located in the United States Code at 42 U.S.C. §§ 2000e–16a, 2000e–16b, and 2000e–16c (2005).

[8]Defendants' factual briefings on this issue provide almost no guidance. Defendants state that Plaintiff Schmidt filed his claim of age discrimination with "the EEOC at least 336 days after the . . . [Board] made the decision to terminate his employment." (Defs.' Br. at 30.) In support of this factual contention, Defendants cite, in order, (1) Plaintiff Schmidt's deposition, which provides no support for their claim, (2) the CCRD's June 27, 2003 letter, which marginally supports their claim, (3) the CCRD's July 23, 2003 letter, which provides no support for their claim, and (4) the EEOC's March 19, 2004 letter, which provides no support for their claim.

On May 13, 2003, Plaintiff Schmidt filed an intake form with the CCRD with regards to his complaint of age discrimination against the Board. (Pls.' Resp., Ex. 15 at 1–4 [CCRD Intake Form].)  This form, by its own language, does not suffice as an official charge of discrimination. (*Id.*, Ex. 15 at 4 [CCRD Intake Form].)[9]  Nevertheless, several letters by the CCRD and EEOC indicate that at some point Plaintiff Schmidt filed an official charge of discrimination with CCRD. (Defs.' Br., Ex. A–14 [Letter from Lewis to Schmidt on 6/27/03]; Pls.' Resp., Ex. 16 [EEOC Notice of Charge].)

Plaintiff Schmidt's formal filing of a charge with the EEOC on July 2, 2003 is after the 300 day time limit.  (*See* Defs.' Br., Ex. A–13 [EEOC Charge].)  Thus, Plaintiff Schmidt's claim can only be timely if two conditions are met: (1) Plaintiff Schmidt timely filed a charge with the CCRD, and (2) the act of filing a charge with the CCRD is the same as filing a charge with the EEOC for the purposes of timeliness.  Regarding the first condition, neither party has produced adequate evidence regarding whether Plaintiff Schmidt filed a charge of discrimination with the CCRD within 300 days of his termination.  Regarding the second condition, according to 29

---

(*See id.*, Ex. A–3 at 260 [Schmidt Dep.], Ex. A–14 [Letter from Lewis to Schmidt on 6/27/03], Ex. A–15 [Letter from Pryor to Schmidt on 7/23/03], Ex. A–16 [Letter from Leino to Jackson on 3/19/04].)  This is but one of many examples of misleading or patently false citations by Defendants' counsel.

[9]Plaintiff Schmidt argues that this form shows that his filing was timely because of two notations. (Pls.' Resp. at 21.)  Both notations are handwritten, without any evidence as to who wrote these notations or that the anonymous author had knowledge or authority to opine on the timeliness of the filings. (Pls.' Resp., Ex. 15 at 1 [CCRD Intake Form], Ex. 15 at 135 [handwritten notes].)  In fact, the second filing doesn't even contain any indications that it is part of the CCRD forms. (*Id.*, Ex. 15 at 135 [handwritten notes].)  For obvious reasons, these notations do not constitute proper evidence to support the arguments in Plaintiffs' response brief.

C.F.R. § 1626.10(b)(c), the EEOC "may enter into agreements with state or local agencies which authorize such agencies to receive charges and complaints[, and] . . . [c]harges received by one agency under the agreement shall be deemed received by the other agency for purposes of" determining the timeliness of the charge.  29 C.F.R. § 1626.10(b)(c); *see generally Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 308 (2d Cir. 1996) (discussing this rule).  Thus, if CCRD has an agreement with the EEOC under 29 C.F.R. § 1626.10(b)(c), then Plaintiff Schmidt's CCRD filing (if done within 300 days) acts as a filing with the EEOC.  The existence of such an agreement is a question of fact, and neither party has adequately addressed this factual issue.  The EEOC's notice of charge suggests that there is such an agreement, (Pls.' Resp., Ex. 16 [EEOC Notice of Charge] [stating that the filing with the CCRD was sent to the EEOC "for dual filing purposes"]), while the CCRD's June 27, 2003 letter to Plaintiff Schmidt suggests that there is not such an agreement.  (Defs.' Br., Ex. A–14 [Letter from Lewis to Schmidt on 6/27/03] [informing Plaintiff Schmidt that he would have to separately file with the EEOC].)  Since the timing of Plaintiff Schmidt's CCRD filing and the effect of such a filing are both disputed factual questions, I deny Defendants' motion for summary judgment as to Plaintiff Schmidt's ADEA claim.

**9.**  *Defamation*

Defendant Clements moves for summary judgment on both Plaintiff Foraker and Plaintiff Schmidt's fifth claim for relief, defamation.  (Def. Clements' Br. at 7–12.)  Defendant Clements argues that (1) Plaintiffs' defamation claims are barred by the Colorado Governmental Immunity Act, (2) Plaintiffs' have set forth no evidence that Defendant Clements caused false statements pertaining to Plaintiffs to be published that caused injury to Plaintiffs' reputation, and (3)

Plaintiffs' defamation claims are barred by the Colorado Workers' Compensation Act. (*Id.*) Since Defendant Clements' third argument is dispositive, I need not address Defendant Clements' other arguments.

Defendant Clements argues that the Colorado Workers' Compensation Act (the "Act") bars Plaintiffs' defamation claim. (*Id.* at 9–12.)  The Act mandates that an employee's exclusive remedy against an employer or coworkers for personal injuries is under the Act if "at the time of the injury, the employee is performing [a] service arising out of and in the course of the employee's employment." *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 498 (Colo. App. 2002) (quoting Colo. Rev. Stat. § 8–41–301[1][b]).  The word "injury" does not refer to only physical injuries, as Plaintiffs suggest in their brief, (*see* Pls.' Clements Resp. at 5–6), but rather, courts have repeatedly held that outrageous conduct and intentional infliction of emotional distress claims fall within the purview of the Act.  *Popovich v. Irlando*, 811 P.2d 379, 381–85 (Colo. 1991); *Archer*, 70 P.3d at 498; *Farmer v. Central Bancorporation, Inc.*, 761 P.2d 220, 222 (Colo. App. 1988); *Hoffsetz v. Jefferson County Sch. Dist. No. R-1*, 757 P.2d 155, 158 (Colo. App. 1988); *Montoya v. Local Union III of the Int'l Bhd. of Elec. Workers*, 755 P.2d 1221, 1225 (Colo. App. 1988).  Although there are no Colorado cases that directly hold that defamation claims fall within the purview of the Act, based upon the foregoing case law as well as treatises on the subject, defamation claims can be barred by the Act.  *See id.*; 8 Colorado Practice, Personal Injury Torts and Insurance § 54.9 (2d ed. 2000) ("The Act does bar claims of outrageous conduct or defamation by co-employees").  Thus, Plaintiffs' defamation claims are barred if at the time of the injury, Plaintiffs were performing services "arising out of and in the course of" their employment.  Colo. Rev. Stat. § 8–41–301(1)(b).  "Arising out of" and "in the course of"

employment are not synonymous. *Popovich*, 811 P.2d at 383. Thus, I address each term

separately.

> "In the course of employment" generally refers to "the time, place
> and circumstances under which the injury occurred." The "course
> of employment" requirement is satisfied when it is shown that the
> injury occurred within the time and place limits of the employment
> relation and during an activity that had some connection with the
> employee's job-related functions.

*Id.* (quoting *Indus. Comm'n v. London & Lancashire Indem. Co.*, 311 P.2d 705, 707 [Colo.

1957]). Plaintiffs repeatedly contend that Defendant Clements' comments dealt with Plaintiffs'

purportedly poor performance of their employment duties (i.e. dealing with customers and

training other employees) and resulted in the Board terminating Plaintiffs' employment. (Pls.'

Clements Resp. at 2–4.) Thus, Plaintiffs' injury occurred in the course of employment.

> The term "arising out of" is narrower than the term "in the course
> of." An injury or occupational disease "arises out of" employment
> when it has its origin in an employee's work-related functions and
> is sufficiently related thereto as to be considered part of the
> employee's service to the employer in connection with the contract
> of employment.

*Popovich*, 811 P.2d at 383 (citation omitted). Here, Plaintiffs contend that the defamatory

remarks and the results of these remarks dealt with Plaintiffs' purportedly poor performance of

their employment duties. (*See* Pls.' Clements Resp. at 2–4.) Accordingly, I conclude that the

injury, which was Plaintiffs' termination resulting from Defendant Clements allegedly

defamatory remarks, had its origin in Plaintiffs' work related functions and dealt with Plaintiffs'

employment. For these reasons, the Act bars Plaintiffs' defamation claims against Defendant

Clements.

10.     *Other Matters*

Defendants also note that Defendant Lasha did not take office as a County Commissioner until January 2003. (Defs.' Br., Statement of Material Facts ¶ 9; Defs.' Br. at 20.) Thus, Defendant Lasha took no actions of which Plaintiffs complain. (*Id.*) Plaintiffs do not materially respond to this issue, except to note that they are withdrawing their procedural due process section 1983 claim against Defendant Lasha. (Pls.' Resp. at 9.) Accordingly, I grant Defendants' motion for summary judgment as to all claims for relief as to Defendant Lasha.

11.     *Conclusion*

Based on the foregoing it is therefore

ORDERED as follows:

1. Defendant Clements' motion for summary judgment (# 32) is GRANTED.

2. Defendants Schauer, Lasha, McNew, and the Board's motion for summary judgment (# 33) is GRANTED in part and DENIED in part.

   a. Defendants' motion for summary judgment is GRANTED as to Defendant Lasha.

   b. Defendants' motion for summary judgment is also GRANTED as to Defendants Schauer, McNew, and the Board on (1) Plaintiff Foraker and Plaintiff Schmidt's outrageous conduct claims, (2) Plaintiff Schmidt's section 1983 liberty interest claim, (3) Plaintiff Foraker and Plaintiff Schmidt's Colorado Open Meetings Law claims, (4) Plaintiff Foraker's section 1983 liberty interest claim, and (5) Plaintiff Schmidt's state discrimination law and Government Employee Rights Act of 1991 claims.

c.  Defendants' motion for summary judgment as to Defendants Schauer, McNew, and the Board are DENIED as to (1) Plaintiff Foraker and Plaintiff Schmidt's procedural due process section 1983 claims, (2) Plaintiff Foraker and Plaintiff Schmidt's breach of contract claims, (3) Plaintiff Foraker's section 1983 liberty interest claim, and (4) Plaintiff Schmidt's ADEA claim.

3.  Defendants' Motion to Stay (# 34) is DENIED as moot.

4.  Plaintiffs' Motion to Supplement (# 61) is GRANTED.

5.  The court will hold a Final Pretrial Conference commencing at 10:30 o'clock a.m. on Friday, **October 14, 2005**, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web addresses should be used to insure that the proper format is observed.

Dated this  _4th_  day of August, 2005.

BY THE COURT:

s/Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge